1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JON P. KARDASSAKIS, SB# 90602
2    E-Mail: Jon.Kardassakis@lewisbrisbois.com
   633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
   Telephone: 213.250.1800
4  Facsimile: 213.250.7900

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   MICHAEL K. JOHNSON, SB# 130193
6    E-Mail: Michael.Johnson@lewisbrisbois.com
   2185 North California Boulevard, Suite 300
7  Walnut Creek, California 94596
   Telephone: 925.357.3456
8  Facsimile:  925.478.3260

9  Attorneys for Defendant
   MEYER CORPORATION, U.S.
10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14
   HOWARD CLARK, on behalf of himself          Case No.
15 and all others similarly situated,
                                                San Francisco Superior Court
16            Plaintiff,                         Case No. CGC-22-603458

17       vs.                                    **[CLASS ACTION]**

18                                              **DEFENDANT'S NOTICE OF**
   MEYER CORPORATION, U.S.,                     **REMOVAL OF CLASS ACTION TO**
19                                              **FEDERAL COURT**

20            Defendant.                        **DIVERSITY - CAFA**

21                                              (*Filed concurrently with supporting*
                                                *declarations.*)
22

23

24        **PLEASE TAKE NOTICE** that Defendant MEYER CORPORATION, U.S.

25 ("Defendant") hereby removes the above-captioned action from the Superior Court of the

26 State of California, for the County of San Francisco, to the United States District Court for

27 the Northern District of California, under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

28        In support of this Notice of Removal, Defendant states as follows:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1.     Removal is proper in this case because this Notice of Removal demonstrates that all requirements for removal are met under 28 U.S.C. §§ 1332(d) and 1453 pursuant to the Class Action Fairness Act ("CAFA").

2.     On December 13, 2022, Plaintiff HOWARD CLARK ("Plaintiff") filed this putative class action against Defendant by filing a Class Action Complaint ("Complaint") in the Superior Court of the State of California, for the County of San Francisco, bearing the case number CGC-22-603458. Declaration of Michael K. Johnson ("Johnson Decl."), ¶ 3, Exh. A.

3.     Plaintiff's Complaint alleges six causes of action for: (1) unjust enrichment; (2) violation of the California Legal Remedies Act, Cal. Bus. & Prof. Code §1750, et seq.; (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §17500, et seq.; (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq.; (5) breach of express warranty, Cal. Com. Code §2313, et seq.; and (6) breach of implied warranty, Cal. Com. Code §2314, et seq.

4.     Plaintiff served the Summons and Complaint on Defendant on January 9, 2023.  Johnson Decl., ¶ 2, Exh. D.  This Notice of Removal is timely filed within thirty days of service of process on Defendant. 28 U.S.C. § 1446(b).

5.     Defendant answered Plaintiff's Complaint on February 7, 2023 in state court.

6.     The Superior Court of the State of California, County of San Francisco, is located within the Northern District of California.  Thus, venue is proper under 28 U.S.C. § 84(a) because this is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

7.     No previous application has been made for the relief requested herein.

8.     Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed, served, or received by Defendant in this action are attached hereto, specifically:

a. A true and correct copy of Plaintiff's Complaint filed December 13, 2022 in the Superior Court of the State of California, for the County of San Francisco, bearing the case number CGC-22-603458, is attached hereto as

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**Exhibit A**.  Johnson Decl., ¶ 3.

b. A true and correct copy of the Superior Court's Notice to Plaintiff, filed December 13, 2022 in the Superior Court of the State of California, County of San Francisco, bearing case number CGC-22-603458, is attached hereto **as Exhibit B**.  Johnson Decl., ¶ 4.

c. A true and correct copy of the Civil Case Cover Sheet filed by Plaintiff's counsel on December 15, 2022 in the Superior Court of the State of California, County of San Francisco, bearing case number CGC-22-603458, is attached hereto as **Exhibit C**.  Johnson Decl., ¶ 5.

d. A true and correct copy of Plaintiff's Proof of Service of Summons and Complaint on Defendant filed January 11, 2023 in the Superior Court of the State of California, County of San Francisco, bearing case number CGC-22-603458, is attached hereto as **Exhibit D**.  Johnson Decl., ¶ 6.

e. A true and correct copy of Defendant's Answer to Plaintiff's Complaint filed February 7, 2023 in the Superior Court of the State of California, County of San Francisco, bearing case number CGC-22-603458, is attached hereto as **Exhibit E**.  Johnson Decl., ¶ 7.

9. A true and correct copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, County of San Francisco in accordance with 28 U.S.C. § 1446(d).

## I. REMOVAL IS PROPER DUE TO THE JURISDICTION CONFERRED UNDER THE CLASS ACTION FAIRNESS ACT

10. This case is subject to removal under the Class Action Fairness Act ("CAFA") of 2005. Pub. L. No. 109-2, 119 Stat. 4.  28 U.S.C. §§ 1332(d) and 1453.

11. CAFA grants federal district courts jurisdiction over civil class action lawsuits in which any plaintiff is a citizen of a state different from any defendant, and where the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.  28 U.S.C. § 1332(d).  Unlike other diversity jurisdiction cases, "no antiremoval

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4861-4511-1374.1                3                Case No.
DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION; SUPPORTING DECLARATIONS

1    presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co., LLC v.*

2    *Owens*, 574 U.S. 81, 89 (2014).

3        12.    Plaintiff purports to bring this class action on behalf of himself and other

4    consumers who purchased Defendant's Anolon nonstick cookware that was labeled and

5    advertised with the representation that the cookware was "PFOA-Free."  *See* Complaint ¶¶

6    4, 79-80.  Plaintiff's class action filed in State court is brought under California *Code of*

7    *Civil Procedure* section 382, a statute similar to a class action as defined in Rule 23 of the

8    Federal Rules of Civil Procedure.  28 U.S.C. § 1332(d)(1)(B).

9        13.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §

10   1332(d) and 1453(b) because it is a civil putative class action wherein: (1) there are 100 or

11   more members in Plaintiff's proposed class; (2) defendant is not a state, state official, or

12   other governmental entity; (3) there is minimal diversity between at least one class

13   member and one defendant; and (4) the aggregate amount in controversy exceeds

14   $5,000,000.

15       **A.    <u>The Putative Class Size Consists of More than 100 Members.</u>**

16       14.    Plaintiff purports to bring this suit individually and on behalf of a National

17   Class and a California subclass which are defined in the Complaint as follows:

18       **<u>National Class</u>**. "During the maximum period permitted by law, all persons

19       residing in the United States who purchased the Class Products." Complaint ¶ 79.

20       **<u>California Subclass</u>**. "During the maximum period permitted by law, all persons

21       residing in the State of California who purchased the Class Products." Complaint ¶

22       80.

23       15.    The term "Class Products" is defined at paragraph 4 of the Complaint as

24   follows: "Plaintiff purchased Defendant's cookware, that is purportedly "PFOA FREE"

25   and uses "PFOA-free nonstick" technology (the "PFOA-free Representations"), but later

26   learned that the products were not, in fact, PFOA-free. Plaintiff thus brings this action for

27   himself and on behalf of other consumers who purchased Defendant's Anolon nonstick

28   cookware that was falsely labeled and advertised with the PFOA-free Representations (the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  "Class Products")."

2  16.    The numerosity requirement is satisfied where it is apparent on the face of

3  the Complaint that there are over 100 putative class members.  *Murray v. DirecTV, Inc.*,

4  2013 U.S. Dist. LEXIS 197794, at *18-19 (C.D. Cal. July 23, 2013).  *See also Tompkins v.*

5  *Basic Research LL*, 2008 WL 1808316, at *3 (E.D. Cal. Apr. 22, 2008) (finding CAFA's

6  numerosity requirement satisfied where facially apparent from the complaint); *Kuxhausen*

7  *v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (citing *Tompkins*).

8  17.    Plaintiff alleges in the Complaint that "Although the precise number of Class

9  members is unknown to Plaintiff, upon information and belief the Class would easily

10  number in the thousands if not tens of thousands."  Complaint ¶ 85.  This is greater than

11  the requisite 100 members required under 28 U.S.C. § 1332(d)(5)(B).

12  18.    Defendant's business records show that there are far more than 100 members

13  of Plaintiff's putative class.  Declaration of Serena Williams ("Williams Decl."), ¶ 7.  Thus,

14  the putative class size easily exceeds CAFA's minimum requirement.

15  **B.    Defendants Are Not a Government Entity.**

16  19.    Defendant Meyer Corporation, U.S. is not a state, state official or any other

17  government entity.  Johnson Decl., ¶ 8.

18  **C.    There is Minimal Diversity of Citizenship Between The Parties.**

19  20.    At least one member of the proposed class is a citizen of a state different

20  from Defendant.  28 U.S.C. § 1332(d)(2)(A); *see* Complaint ¶¶ 79, 84-85. Plaintiff alleges

21  that "Defendant designs, manufactures, labels, markets, distributes, and sells the Class

22  Products to consumers throughout the United States, including in California. The Class

23  Products are sold at various online and brick-and-mortar retailers."  Complaint ¶ 5.  See

24  also, Williams Decl., ¶ 8 ("MUS sells its Anolon non-stick cookware throughout the

25  United States.").

26  21.    A removing party may introduce "objective facts" in support of removal that

27  would tend to show the domicile or citizenship of a party in a particular state.  *See Lew v.*

28  *Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he determination of an individual's domicile

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4861-4511-1374.1                                        5                                        Case No.
DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION; SUPPORTING DECLARATIONS

involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

22.     According to the Complaint, Plaintiff Howard Clark resides and is domiciled in San Francisco, California.  Complaint ¶ 14.  This allegation establishes that he is a citizen of California.  *Lew v. Moss*, 797 F.2d at 751 (allegations of residency can create a rebuttable presumption of domicile supporting diversity of citizenship).

23.     Defendant Meyer Corporation, U.S. is a corporation organized under the law of Delaware, and at all relevant times its headquarters and principal place of business has been located at 525 Curtola Parkway, Vallejo, California.  Johnson Decl., ¶ 7; Complaint ¶ 15.  Meyer Corporation, U.S. is a citizen of the state where its principal place of business is located and the state in which it has been incorporated.  28 U.S.C. § 1332(c).   As such, Defendant Meyer Corporation, U.S. is a citizen of Delaware and California.

24.     The diversity requirements of CAFA require only that the citizen of any member of the class be diverse from any defendant.  Here, because the "Class Products" were sold to Class member consumers "throughout the United States" including "at various online and brick-and-mortar retailers," (Complaint ¶ 5; Williams Decl., ¶ 8), and because Defendant is a citizen of Delaware and California, the "minimal diversity" requirement under CAFA is satisfied.  28 U.S.C. § 1332(d)(2)(A).

**D.     The Amount in Controversy Requirement Is Satisfied.**

25.     Without making any admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

26.     To remove a case under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal.  *Dart Cherokee*

*Basin Operating Co., LLC*, 574 U.S. at 83 (a notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exist. *Id.* at 89. Evidence is required "*only* when plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

27.    The amount in controversy is "simply an estimate of the total amount in dispute … [and] [i]n that sense, the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Arias*, 936 F.3d at 927. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation marks omitted).

28.    The Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* at 89. Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal . . ." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.") In *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 929 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" *See also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4861-4511-1374.1

7

Case No.

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION; SUPPORTING DECLARATIONS

29.     Defendant disputes that Plaintiff's putative class or subclass could ever be certified, and Defendant disputes that it is liable for any of Plaintiff's claims asserted in the Complaint.  Nevertheless, the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000.  28 U.S.C. § 1332(d)(2), (6).  Although Plaintiff does not plead a specific amount of damages in the Complaint, Defendant can demonstrate that the aggregate amount in controversy exceeds $5,000,000.  *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 84 ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").

30.     Here, Plaintiff alleges "Economic Injury to Plaintiff and the Class."  See, Complaint, ¶¶ 63-78.  See also, Complaint ¶ 13 (alleging Plaintiff and the Class "did not receive the benefit of their bargain").  Plaintiff alleges in Count Five – Breach of Express Warranty: "As a result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as the product they received was not worth the price they paid for it. Plaintiff alleges that the product was worthless because no reasonable consumer would pay for cookware that contained PFOA and, alternatively, that they paid a price premium for the allegedly PFOA-free cookware, in which they did not receive the promised consideration. In reality, a reasonable consumer would pay significant money simply to avoid or limit exposure to forever chemicals like PFOA … ." Complaint, ¶ 178.  See also, Complaint ¶ 184 (alleging damages to Plaintiff and the Class).

31.     Plaintiff alleges that his claims are "typical of other Class members' claims because Plaintiff and the Class all purchased Class Products that are substantially similar in design and were uniformly labeled and marketed. Plaintiff and the Class all received less than the full value of Class Products they believed they were purchasing based upon uniform misrepresentations/omissions."  Complaint, ¶ 87.

32.     Plaintiff seeks the following relief on behalf of himself and the putative Class: an order certifying the Class, naming Plaintiff as representative of the Class and appointing Plaintiff's attorneys as Class Counsel; an order declaring that Defendant's conduct violates the statutes referenced in the Complaint; judgment in favor of Plaintiff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

and the putative Class on all counts asserted in the Complaint; compensatory, statutory, and punitive damages and applicable penalties in amounts to be determined by the Court and/or jury; injunctive relief, restitution, disgorgement, penalties, and other monetary and non-monetary equitable relief; pre- and post-judgment interest; reasonable attorneys' fees and costs; and all other relief available at law or in equity.  Complaint p. 35 (Prayer for Relief).

33.     Defendant's sales records for 2020, 2021 and 2022 show that revenue from sales of its Anolon non-stick cookware exceeded $5,000,000 for the years 2020 through 2022.  Williams Decl., ¶ 9.

34.     In addition to damages, for CAFA cases, "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy."  *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018).  Further, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Id.*

35.     In general, a 25% benchmark of the potential damages may approximate the potential attorneys' fees.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that where attorneys' fees are permissibly used in calculating the amount in controversy, a benchmark of 25% of the common fund was appropriate).

36.     Plaintiff seeks attorneys' fees and litigation costs in his Complaint at Count Two (¶ 135),  Count Five (¶ 179), and Demand for Relief (p. 35).

37.     The above amount in controversy does not take into account the value of Plaintiff's claims for declaratory and injunctive relief.

38.     Based on the foregoing, the $5,000,000 amount in controversy requirement under CAFA is easily met for this action.

## II.     **REMOVAL IS TIMELY**

39.     Under 28 U.S.C. section 1446(b), the 30-day period for filing a notice of removal begins to run only after formal service is made. In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), the Supreme Court explained that under 28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

U.S.C. § 1446(b), "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347.  *See also Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1132-33 (9th Cir. 2011)

40.     Plaintiff's service of the Summons and Complaint on Defendant was completed on January 9, 2023.  Johnson Decl., ¶ 2 and Exh. D. Therefore, this Notice of Removal is timely filed within thirty days of service of process. 28 U.S.C. § 1446(b)..

## III.     NO OTHER DEFENDANTS HAVE JOINED THE ACTION

41.     There are no other defendants that have been named or served in this action, therefore, there are no other defendants to join in this Notice of Removal.

## IV.     SERVICE OF NOTICE ON PLAINTIFFS AND STATE COURT

42.     Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be given by the undersigned to Plaintiff's counsel of record:

Daniel L. Warshaw (CA Bar No. 185365)
Michael H. Pearson (CA Bar No. 277857
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
dwarshaw@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN BN 0387900)*
PEARSON, SIMON & WARSHAW, LLP
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
mweiner@pswlaw.com

Matthew D. Schultz (FL BN 640328)*
Rebecca K. Timmons (FL BN 121701)*
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
mschultz@levinlaw.com
btimmons@levinlaw.com

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Alex Straus (CA Bar No. 321366)
   MILBERG COLEMAN BRYSON PHILLIPS
2  GROSSMAN, LLP
   16748 McCormick Street
3  Los Angeles, California 91436
   Telephone: (917) 471-1894
4  Facsimile: (310) 496-3176
   astraus@milberg.com
5
   Rachel L. Soffin* (FL BN 18054)
6  MILBERG COLEMAN BRYSON PHILLIPS
   GROSSMAN LLP
7  800 S. Gay St., Suite 1100
   Knoxville, Tennessee 37929
8  Telephone: (865) 247-0080
   rsoffin@milberg.com
9
   Erin J. Ruben* (VA BN 73073, NC BN 39184)
10 MILBERG COLEMAN BRYSON PHILLIPS
   GROSSMAN, LLP
11 900 W. Morgan Street
   Raleigh, NC 27603
12 P.O. Box 12638
   Raleigh, NC 27605
13 eruben@milberg.com

14 Harper T. Segui* (GA BN 096540, SC BN 77730)
   MILBERG COLEMAN BRYSON PHILLIPS
15 GROSSMAN, LLP
   825 Lowcountry Blvd., Suite 101
16 Mt. Pleasant, SC 29464
   hsegui@milberg.com
17
   Attorneys for Plaintiff and the Putative Class
18 *Pro Hac Vice application forthcoming

19      43.     A copy of this Notice of Removal will be served upon all parties and filed

20 with the Clerk of the Superior Court of the State of California, for the County of San

21 Francisco, where the action is pending, as required by 28 U.S.C. § 1446(d).

22      WHEREFORE, Defendant removes this action from the Superior Court of the State

23 of California, for the County of San Francisco, bearing case number CGC-22-603458, to

24 this Court, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

25      ///

26      ///

27      ///

28      ///


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   DATED:  February 8, 2023          LEWIS BRISBOIS BISGAARD & SMITH LLP

2                                      By: _____

3                                          JON P. KARDASSAKIS

4                                          MICHAEL K. JOHNSON
                                           Attorneys for Defendant
5                                          MEYER CORPORATION, U.S.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**CERTIFICATE OF SERVICE**
*Howard Clark v. Meyer Corporation, U.S.*
USDC-ND, Case No. _____
(San Francisco Superior Court Case No. CGC-22-603458)

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On February 8, 2023, I served the following document:  **DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO FEDERAL COURT**

I served the document on the following person at the following address (including a fax number and email address, if applicable):

**SEE ATTACHED SERVICE LIST**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** The document was served by CM/ECF (excluding those not registered for CM/ECF who were served by mail or email, if applicable).

☒ **(BY ELECTRONIC TRANSMISSION ONLY)** Only by emailing the document to the person at the email address listed above based on notice provided on March 16, 2020, that during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on February 8, 2023, at Sacramento, California.

_____
Sandra Hayes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

**SERVICE LIST**
*Howard Clark v. Meyer Corporation, U.S.*
USDC-ND, Case No. _____
(San Francisco Superior Court Case No. CGC-22-603458)

4

5

6

7

Daniel L. Warshaw
Michael H. Pearson
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
dwarshaw@pswlaw.com
mpearson@pswlaw.com

*Attorneys for Plaintiff and the
Proposed Class*

8

9

10

11

12

Alex Straus
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP
16748 McCormick Street
Los Angeles, California 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
astraus@milberg.com

13

14

15

16

Melissa S. Weiner (*pro hac vice application
forthcoming*)
PEARSON, SIMON & WARSHAW, LLP
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
mweiner@pswlaw.com

17

18

19

20

21

Matthew D. Schultz (*pro hac vice application
forthcoming*)
Rebecca K. Timmons (pro hac vice pending)
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
mschultz@levinlaw.com
btimmons@levinlaw.com

22

23

24

25

Rachel L. Soffin (*pro hac vice application
forthcoming*)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN LLP
800 S. Gay St., Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
rsoffin@milberg.com

26

27

28

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

1  Erin J. Ruben (*pro hac vice application forthcoming*)
2  MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP
3  900 W. Morgan Street
   Raleigh, NC 27603
4  P.O. Box 12638
   Raleigh; NC 27605
5  eruben@milberg.com

6  Harper T. Segui  (*pro hac vice application forthcoming*)
7  MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP
8  825 Lowcountry Blvd., Suite 101
   Mt. Pleasant, SC 29464
9  hsegui@milberg.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# EXHIBIT  A

Daniel L. Warshaw (CA Bar No. 185365)
Michael H. Pearson (CA Bar No. 277857
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300

Alex Straus (CA Bar No. 321366)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (917) 471-1894

*Attorneys for Plaintiff and the Proposed Class*

*Additional Attorneys Listed on Signature Page*

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/13/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

**CGC-22-603458**

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL

HOWARD CLARK, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

MEYER CORPORATION, U.S.,

Defendant.

CASE NO.

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT FOR:**

1. UNJUST ENRICHMENT
   (In the Alternative)

2. VIOLATION OF CALIFORNIA LEGAL
   REMEDIES ACT, Cal. Bus. & Prof.
   Code §§ 1750, *et seq.*

3. VIOLATION OF CALIFORNIA FALSE
   ADVERTISING LAW, Cal. Bus. & Prof.
   Code §§ 17500, *et seq.*

4. VIOLATION OF CALIFORNIA
   UNFAIR COMPETITION LAW, Cal.
   Bus. & Prof. Code §§ 17200, *et seq.*

5. BREACH OF EXPRESS WARRANTY,
   Cal. Com. Code §§ 2313, *et seq.*

6. BREACH OF IMPLIED WARRANTY,
   Cal. Com. Code §§ 2314, *et seq.*

## I.   NATURE OF THE CASE

1.    In recent years, "forever chemicals" have received widespread media attention and have raised substantial health and environmental concerns among government officials, public health authorities, and the public itself. Chief among the "forever chemicals" are PFAS (per- and polyfluoroalkyl substances), including Perfluorooctanoic acid (PFOA). Consumer goods manufacturers have capitalized on concerns over these chemicals by marketing "PFAS-free" and "PFOA-free" products ranging from children's clothing, to makeup, to cookware items, which routinely command a premium price because consumers wish to buy—and will pay a premium price for—products that are free of such chemicals.

2.    Nonstick cookware is a consumer household good that has recently received a significant amount of attention from health agencies as being "unsafe" due to its frequent inclusion of potentially harmful PFAS, including PFOA. As a result, consumer demand has increased for "safe" nonstick cookware that provides nonstick benefits without the use of forever chemicals.

3.    Health-conscious consumers will pay a premium price for safe nonstick cookware to avoid ingesting chemicals and other toxicants when eating food or when serving it to their families.

4.    Plaintiff is one such consumer. Plaintiff purchased Defendant's cookware, that is purportedly "PFOA FREE" and uses "PFOA-free nonstick" technology (the "PFOA-free Representations"), but later learned that the products were not, in fact, PFOA-free. Plaintiff thus brings this action for himself and on behalf of other consumers who purchased Defendant's Anolon nonstick cookware that was falsely labeled and advertised with the PFOA-free Representations (the "Class Products"). Plaintiff seeks damages and equitable remedies for himself and for the putative Class.[1]

---

[1] Throughout this Complaint, Plaintiff's use of "the Class" to refer to putative members of the proposed National Class and all proposed Subclasses as defined in Section V below.

5.    Defendant designs, manufactures, labels, markets, distributes, and sells the Class Products to consumers throughout the United States, including in California. The Class Products are sold at various online and brick-and-mortar retailers.

6.    Defendant has capitalized on the ever-increasing consumer demand for products free of potentially harmful chemicals, which is why it has affirmatively advertised and labeled the Class Products with the PFOA-free Representations.

7.    Consumers, including Plaintiff, purchase the Class Products because of the PFOA-free Representations. Defendant even doubles down by confirming that "PFOA FREE" means consumers can "Cook with pure freedom: PFOA-Free nonstick"—an attribute it recognizes has value to consumers. All other things being equal, consumers have a reasonable preference for consumer goods that are free from "forever chemicals" like PFOA, which is why representations such as "PFOA FREE" are held out to consumers as a point of differentiation for such products, including the Class Products at issue in this action.

8.    Through its uniform labeling and marketing of the Class Products, Defendant has led reasonable consumers to believe that the Class Products are a superior choice because they are free from potentially harmful PFAS, including PFOA.

9.    In reality, the Class Products contain multiple, potentially harmful per- and polyfluoroalkyl substances ("PFAS") including Perfluorooctanoic acid ("PFOA").

10.   Despite Defendant's bold promise to the contrary, Plaintiff's independent industry standard testing confirmed the presence of PFOA and other PFAS chemicals in the Class Products. The presence of PFOA and other PFAS contradicts Defendant's unvarying and explicit PFOA-free Representations.

11.   Defendant either knowingly and willfully concealed and misrepresented the true nature of the Class Products to consumers, or it failed to conduct due diligence, i.e., basic lab testing to verify the accuracy of the PFOA-free

Representations—the key characteristic differentiating Defendant's purportedly "PFOA-free" cookware products from other nonstick products.

12.   Defendant's misconduct is straightforward: It uniformly claimed on the Class Product labels that they contain no PFOA, but they do contain PFOA. Had Defendant disclosed to Plaintiff and the Class that the Class Products contain PFOA and other PFAS chemicals—or had Defendant accurately labeled the Class Products by omitting PFOA-free Representations—Plaintiff and the Class would not have purchased the Class Products, or they would have paid less for them.

13.   As a result of Defendant's misconduct and misrepresentations, Plaintiff and the Class suffered economic injury at the time of purchase because the products they received differed from the products as represented on the product labels, and the products Plaintiff received were of a different and substantially lesser value than Defendant represented. In short, Plaintiff and the Class did not receive the benefit of their bargain.

## II.   PARTIES

14.   Plaintiff Howard Clark is a resident of, and is domiciled in, San Francisco, California.

15.   Defendant Meyer Corporation, U.S., is incorporated in Delaware and maintains its headquarters and principal place of business at 525 Curtola Parkway, Vallejo, California 94590. Defendant manufactures and markets the Class Products.

## III.   JURISDICTION AND VENUE

16.   **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant because it involves violations of California state law.

17.   **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant resides and is domiciled in the State of California and because of the substantiality and nature of its contacts with this forum. Defendant purposefully availed itself of the privilege of doing business within the state—

1   including within this county—and has had continuous and systematic general and

2   case-related business contacts within this county.

3        18.   Additionally, Defendant committed the tortious acts at issue in this case

4   throughout the State of California, including within this county. This action thus arises

5   out of and relates to conduct within this forum.

6        19.   In short, Defendant has been systematically and continuously present

7   within California and within this county, has served a market in California and in this

8   county for the Class Products—i.e., the products that caused economic injury to

9   Plaintiff and the Class—such that there is a strong relationship among Defendant, this

10  forum, and the litigation and there is a substantial connection between Defendant's

11  forum contacts and the claims asserted in this action.

12       20.   **Venue.** Venue is proper because a substantial part of the events or

13  omissions giving rise to Plaintiff's claims occurred within this district—namely, this

14  action arises from misrepresentations made in connection with Defendant's sale of

15  consumer goods for household use to Plaintiff, who resided in and purchased the

16  goods in this forum and who today resides in this forum.

17  **IV.   ADDITIONAL FACTUAL ALLEGATIONS**

18        **A.   PTFE ("Teflon"), PFAS, and PFOA**

19       21.   In 1938, chemists accidentally synthesized a waxy, slippery, fluorinated

20  plastic known as Polytetrafluoroethylene (PTFE).[2] This slippery property made PTFE

21  an attractive compound for coating components and products to reduce friction.

22       22.   PTFE was patented in 1941 and in 1945 was sold under the registered

23  trademark "Teflon."

24       23.   PTFE is in a group of nearly 4,000 compounds known as PFAS. PFAS are

25  a category of man-made chemicals that include fluorosurfactants, which reduce the

26

27

28  _____
    [2] https://www.teflon.com/en/news-events/history

surface tension between two substances.[3] PFAS are necessary for the production of PTFE (Teflon).

24.   Fluorosurfactants typically are removed from PTFE toward the end of production via a drying process. However, residual fluorosurfactants may remain in the polymer dispersion even after it is applied to cookware or other hardware components for its nonstick properties.

25.   While there are thousands of PFAS, they all are categorized as either "long-chain" or "short-chain" based on the number of carbon atoms comprising the perfluoroalkyl tail. Long-chain PFAS contain eight or more carbon atoms, while any PFAS containing fewer than eight carbon atoms in the perfluoroalkyl tail are considered short-chain. All PFAS contain carbon-fluorine bonds—one of the strongest in nature—making them highly persistent in the environment and in human bodies.[4]

26.   PFOA is a PFAS compound with eight carbon atoms (commonly referred to as C8), seven of which are fully fluorinated.[5]

27.   PFOA is bioaccumulative, meaning it builds up in the body over time. These chemicals are sometimes called "forever chemicals" and have been associated with a host of serious adverse health consequences in humans.

28.   It is well known in the cookware industry (but not among the general public) that any nonstick coating that uses an 8-carbon perfluoroalkyl chemical at any point in the manufacturing process contains some amount of PFOA in the finished product.[6]

---

[3] PFAS include any organic compound with one or more fluorine atoms substituted for hydrogen in an alkyl chain.

[4] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html

[5] The related PFAS compound PFOS has all eight carbons fully fluorinated. PFOA and PFOS both are commonly referred to as "C8." PFOA's CAS No. is 335-67-1.

[6] Schlummer, M., et al., Emission of perfluoroalkyl carboxylic acids (PFCA) from heated surfaces made of polytetrafluoroethylene (PTFE) applied in food contact materials and consumer products, 129 Chemosphere 46-53 (2015) (available at: https://www.sciencedirect.com/science/article/abs/

6
CLASS ACTION COMPLAINT

29.  A reasonable manufacturer thus would know that PFOA and other PFAS are likely to be present in the end products of this manufacturing process. A reasonable manufacturer also would know that PFOA and other PFAS may migrate during cooking, meaning that nonstick cookware containing PFOA and PFAS releases the chemicals into the environment and into cooked food.

30.  Thus, cookware manufacturers know, or should know from common industry knowledge, that residual PFAS is present in the cookware and can be ingested or dispersed into the environment.[7]

31.  Unsurprisingly, an ordinary consumer would not expect to find PFOA in products labeled "PFOA free."

32.  PFOA is a highly environmentally persistent chemical and was declared by FDA as an emerging contaminant in 2014.[8]

33.  PFOA is associated with negative health outcomes including kidney cancer, testicular cancer, and liver damage.[9]

34.  In 2017, the State of California added PFOA and the related chemical PFOS to its Proposition 65 list as developmental/reproductive toxicants. PFOA and PFOS were both listed in February 2022 as carcinogens.[10] OEHHA set the notification

---

pii/S004565351401354X). *See also* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA) (May 2016) at 21 ("Food can become contaminated with PFOA from preparation in nonstick cookware coated with [PTFE] …. PFOA can be emitted from nonstick cookware coated with PTFE.") (available at: https://www. epa.gov/sites/default/files/2016-05/documents/ pfoa_ health_ advisory_final-plain.pdf).

[7] Luo, et al., Raman imaging for the identification of Teflon microplastics and nanoplastics released from non-stick cookware, *Science of the Total Environment* 851 (2022) 158293 (confirming that Teflon microplastics and nanoplastics are released during cooking "and are directly present in our food").

[8] https://nepis.epa.gov/Exe/ZyPDF.cgi/P100LTG6.PDF?Dockey=P100LTG6.PDF

[9] EPA, 2016 *supra*; Lau, C., *et al*. Perfluoroalkyl Acids: A Review of Monitoring and Toxicological Findings, Toxicological Sciences, Vol. 99, Issue 2 at 366-94 (2007): https://doi.org/10.1093/toxsci/kfm128

[10] https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslistsing lelisttable2021p.pdf (including PFOS "and its salts and transformation and degradation precursors" as well as PFOA).

1    level for PFOA at the lowest level of detection because "OEHHA's reference levels

2    for cancer are below the limit of quantitation."[11]

3        35.   The Safety Data Sheet (SDS) for PFOA warns that it is suspected of

4    causing cancer; may damage fertility or the unborn child; causes damage to the liver

5    through prolonged or repeated exposure; causes serious eye damage; and that it is

6    harmful if swallowed or inhaled.[12]

7        36.   Due to health and environmental concerns, EPA and PFOA manufacturers

8    sought to eliminate PFOA from the manufacturing process for PTFE by 2015.[13]

9        **B.   Plaintiff's Testing**

10        37.   Plaintiff sought independent, third-party testing from a reputable lab to

11    determine whether the Class Products contain PFOA or other PFAS.[14]

12        38.   The lab that conducted the testing is accredited for PFAS analysis and the

13    test results meet all 2003 NELAC, 2009 TNI and 2016 TNI requirements for

14    accredited parameters. The method employed (EPA 537 Modified) is standard within

15    the industry for detecting and quantifying PFAS in solid matrices (like cookware).

16        39.   Testing results showed PFOA present at 0.72 ug/kg (parts per billion) in

17    Defendant's nonstick hard-anodized 8.5-inch skillet.

18        40.   As a point of reference, EPA issued in 2016 an interim lifetime non-cancer

19    health advisory (HA) of 70 parts per *trillion* (0.00007 parts per billion) for PFOA in

20

21    PFOA was first listed as a developmental toxicant in November 2017 and added as a carcinogen in

22    February 2022.

23    [11] https://oehha.ca.gov/chemicals/perfluorooctanoic-acid-pfoa

24    [12] PFOA Safety Data Sheet: https://www.agilent.com/cs/library/msds/N-1588_NAEnglish.pdf

25    [13] EPA Fact Sheet: 2010/2015 PFOA Stewardship Program: https://www.epa.gov/
      assessing-and-managing-chemicals-under-tsca/fact-sheet-20102015-pfoa-stewardship-

26    program#mfg

27    [14] Plaintiff's counsel spent years trying PFAS ("C8") personal injury and wrongful death claims
      against the chemical industry and were skeptical of Defendant's representations, based upon their

28    knowledge of the underlying science.

drinking water. In June of this year, EPA updated the advisory "because analyses of more recent health effects studies show that PFOA can impact human health at exposure levels much lower than reflected by the 2016 PFOA lifetime HA" and "EPA has identified a pressing need to provide information to public health officials…." EPA proposed a new interim lifetime non-cancer HA of 4 parts per *quadrillion* for PFOA (0.000004 parts per billion).[15]

41.   Plaintiff's testing detected 12 total PFAS, including short-chain and long-chain compounds, in the Class Products.

42.   Plaintiff's independent testing thus revealed PFOA and other PFAS within the Class Products, in direct opposition to Defendant's uniform representations.

## C.  Defendant's Misrepresentations

43.   Nonstick cookware is a highly competitive and lucrative business.[16]

44.   Defendant, well aware of this competition and of consumer demand for nonstick cookware, has sought to distinguish itself from competitors and to attract consumers by marketing and labeling the Class Products with the PFOA-free Representations. Specifically, Defendant has marketed the Class Products as being "PFOA FREE" products, in a bold, all-capitalized font on the product packaging, and in various other marketing materials, where it cannot be missed by consumers. The only reason Defendant would tout the Class Products with the PFOA-free Representations would be to induce purchase. Product labels themselves are a form of marketing and the "real estate" on consumer product goods is extremely limited. Manufacturers thus are careful to maximize available space and to include only claims that would encourage interest and product purchase. In short, Defendant knew that the

---

[15] EPA, Interim Drinking Water Health Advisory: Perfluorooctanoic Acid (PFOA) CASRN 335-67-1 at 1, 10: https://www.epa.gov/system/files/documents/2022-06/interim-pfoa-2022.pdf

[16] https://www.statista.com/statistics/956192/nonstick-cookware-market-value-worldwide/

1    uniform PFOA-free Representations, which appear on every single label, matter to

2    consumers.

3         45.   Defendant Meyer Corporation, U.S., manufactures and sells Anolon-

4    branded cookware. The product label itself states it is "Manufactured by Meyer

5    Corporation, U.S., Vallejo CA 94590."

6         46.   Defendant is well aware that consumers seek nonstick cookware products

7    that are free from potentially harmful chemicals like PFOA. Defendant makes the bold

8    promise of "PFOA FREE" and that consumers can "Cook with pure freedom" and

9    reiterates that their products are "PFOA-Free nonstick." Defendant's uniform labeling

10   is shown below:

11

12

13

14

15       

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    10
                          CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21      47.   While consumers need go no further than the label to see (and believe) that

22   the Class Products are indeed PFOA-free, looking elsewhere would only reinforce this

23   message, and nowhere has Defendant indicated that "PFOA FREE" means anything

24   other than free of PFOA. Defendant's Help Page corroborates its intention to induce

25   consumers to understand that a "safe" and toxin free product is necessarily "PFOA-

26   free":[17]

27   _____

28   [17] https://anolon.com/pages/about

1
2
3
4
5
6
7
8
9
10



11   48.  Elsewhere, Defendant confirms its intent to position its nonstick cookware
12  brands as innovative, safe, and sustainable products produced by an accountable and
13  trustworthy manufacturer, as seen on its official website:[18]
14
15  At Meyer, we're much more than just cookware. We're Inventors. Imaginers. Innovators. Explorers. We're
16  passion and performance addicts, searching for the ideas that make people's lives better and make the
    fast-paced world more creative, more convenient, and more satisfying.
17
    And we're makers, too. With deep roots in creating, manufacturing, and bringing new products to market,
18  we stay connected to our core values of excellence, accountability, collaboration, innovation, customer
    satisfaction, and continual improvement.
19
20   49.  Similarly, any consumer reading Defendant's product descriptions on
21  Amazon.com would see only reinforcement of the "PFOA FREE" label claim, and
22  nothing to contradict it, as seen in the list of "Product Details":[19]
23
24  [18] https://meyerus.com/about/
25  [19]https://www.amazon.com/dp/B07TNMN4Z4/ref=sspa_dk_detail_1?pd_rd_i=B07TNMN4Z4&p
26  d_rd_w=3OyVf&content-id=amzn1.sym.bff6e147-54ad-4be3-b4ea-ec19ea6167f7&pf_rd_
    p=bff6e147-54ad-4be3-b4ea-ec19ea6167f7&pf_rd_r=D35EFX4FA0PZK56X5Y08&pd
27  _rd_wg=YCDEH&pd_rd_r=52969dab-d6a1-4176-b795-f14701d86990&s=home-garden&sp_
    csd=d2lkZ2V0TmFtZT1zcF9kZXRhaW_wy&th=1
28

1
2
3
4
5

- **SEAMLESS SURFACE:** Unique, flush rivets and ultra-durable, PFOA-free nonstick deliver one of the smoothest, longest lasting frying pan surfaces yet -- for recipes that glide off the pan and faster, easier cleanup

6  50.  The page includes options to purchase a number of Class Products, from a

7  grill pan to a roaster to saucepans and skillets, individually or in various combinations

8  and sets, all under the umbrella of these misrepresentations. Although Defendant's

9  "PFOA-free" cookware products come in different shapes and sizes (e.g., cookware

10 diameter, pots vs. pans, etc.), each is substantially similar to the others in design and

11 function and all are sold in substantially similar packages—sometimes as sets—

12 making substantially similar if not identical PFOA-free claims.

13 51.  The omissions and misrepresentations identified in this Complaint are

14 virtually identical across all shapes and sizes of Defendant's "PFOA-free" products

15 and the claims that form the basis of this action would be the same in all essential

16 respects regardless of which shape or size product is considered. That is to say,

17 whether one considers skillets of varying diameters, sauce pans of varying diameters,

18 skillets vs. sauce pans, or entire sets of such products, all are substantially similar and

19 thus contain PFOA, and Defendant's PFOA-free claims are false or misleading as to

20 all due to their uniform design. Thus, all constitute Class Products despite variations

21 in size or shape.

22 52.  And if a consumer were to ask about harmful chemicals in the Class

23 Products—as some have—Defendant's response also would be consistent with the

24 label misrepresentation:

25
26
**Customer questions & answers**

Q  Have a question? Search for answers
27
28

> **Q: Is this made with Teflon?**
> **A:** Our nonstick cookware is PFOA-free, and the nonstick coatings do contain PTFE - actually, all nonstick coatings from any maker contain PTFE. "PTFE" is basically the chemical name of the nonstick coating - it's the actual ingredient that makes the cookware "nonstick." Rest assured, that our nonstick cookware is safe for... see more
> By Manufacturer Customer Support on October 7, 2022
> See other answers

53.   Of note, the "Manufacturer" indication is a "badge" assigned by Amazon to "verified representatives of items listed on Amazon, such as the author, artist, or manufacturer of a product,"[20] and, here, Defendant represents that "our nonstick cookware is PFOA-free...."

54.   The "Customer Questions and Answers" section on Defendant's verified Amazon.com page for its Advanced Hard Anodized nonstick frying pan Class Products, includes the same assurance in response to a consumer inquiry:[21]

> **Q: The description is for a hard-anodized pan but it appears to be just another sort of a teflon coating. Where's the hard-anodized part?**
> **A:** Thank you for your inquiry and we apologize for any confusion. Hard anodization is an electrochemical process that gives the cookware a dark color and makes it twice as hard as stainless steel. The nonstick coating used on our hard anodized cookware lines are PFOA-free and contain PTFE. HArd anodized is the body of the pan, where the nonstick is usually found on the interior of the cookware. We hope this helps. see less
> By Manufacturer Customer Support on November 20, 2019
> See other answers

55.   As the designer, manufacturer, and seller of the Class Products, Defendant knew, or at minimum should have known, that its nonstick cookware is treated with PFOA-containing compounds and other PFAS in order to enhance nonstick performance, and that residual PFAS, including PFOA, would remain in the Class Products.

---

[20] https://www.amazon.com/gp/help/customer/display.html/ref=cm_rn_bdg_help?ie=UTF8&nodeId=14279681

[21] https://www.amazon.com/Anolon-Advanced-Anodized-Nonstick-8-5-Inch/dp/B000069RBS/ref=sr_1_2_sspa?keywords=anolon%2Bcookware&qid=1665438984&qu=eyJxc2MiOiI1LjY3IiwicXNhIjoiNS44NSIsInFzcCI6IjUuMjgifQ%3D%3D&sr=8-2-spons&th=1

56.   Defendant either did not conduct proper testing for PFOA even though a reasonable manufacturer would appreciate the need to do so, or it failed to disclose test results revealing the presence of PFOA and other PFAS in the Class Products.

### D.   Plaintiff's Purchase of the Class Products

57.   Plaintiff Howard Clark purchased Defendant's nonstick cookware from Macy's located at Union Square in San Francisco on or about January 2022.

58.   Plaintiff Howard Clark specifically sought to purchase PFOA-free cookware. At the time of purchase, Plaintiff saw and relied on Defendant's PFOA-free label claim as well as other PFOA-free claims made by Defendant in the course of marketing the Class Products.

59.   As a direct and intended result of Defendant's misrepresentations and omissions, Plaintiff purchased an 8-inch fry pan and 12-inch skillet [Class Products]. Plaintiff would not have made this purchase, or would have paid less, but for the presence of Defendant's false and misleading PFOA-free claim. In other words, if Defendant had not falsely labeled the product, Plaintiff would not have bought it or would have paid less for it.

60.   When Plaintiff learned that the Defendant mislabeled its products, including failing to disclose harmful chemicals the products contained, he stopped using Defendant's nonstick cookware.

61.   Plaintiff did not receive the benefit of his bargain because the cookware failed to conform to Defendant's material PFOA-free representations. Had Plaintiff been aware of the misrepresentations, he would not have purchased the product or would have paid substantially less for it.

62.   Plaintiff would like to purchase Defendant's products in the future if they did met the PFOA-free representations made by Defendant. However, Plaintiff is unable to rely on Defendant's representations regarding its products in deciding whether to purchase Defendant's products in the future.

1

### E.   Economic Injury to Plaintiff and the Class

2

63.   The Class Products are differentiated from other cookware products,

3

including some nonstick products, by Defendant's PFOA-free Representations and the

4

concomitant omission that PFOA and other PFAS are in fact present in the Class

5

Products.

6

64.   Defendant's representations/omissions were deceptive and misleading for

7

the reasons set forth throughout this Complaint.

8

65.   Defendant's representations/omissions were made for the purpose of

9

generating and increasing sales of the Class Products.

10

66.   It would be reasonable for consumers to rely upon Defendant's

11

representations/omissions—as Plaintiff did—and to believe—as Plaintiff did—that a

12

product touted as PFOA-free would, in fact, be "PFOA Free," as stated on the label. In

13

other words, Plaintiff, like any other ordinary reasonable consumer, was entitled to

14

rely and in fact relied upon Defendant's PFOA-free misrepresentations/omissions in

15

making purchasing decisions.

16

67.   As a direct and proximate result of Defendant's misrepresentations/

17

omissions, Plaintiff and the Class purchased the Class Products for their personal use.

18

68.   Defendant's representations/omissions conveyed to any reasonable

19

consumer the impression that the Class Products' purported PFOA-free design carried

20

particular value. Plaintiff and the Class placed value on the Class Products' supposed

21

PFOA-free character.

22

69.   Because the Class Products are not, in fact, PFOA-free, Plaintiff and the

23

Class received products of substantially lesser value—products sold at a premium

24

price—than Defendant represented.

25

70.   Accordingly, Plaintiff and the Class did not realize the benefit of the

26

bargain and their expectations were not met.

27

71.   Plaintiff and the Class effectively paid more than the market value

28

represented by the price bargained for. Plaintiff and the Class bargained with

Defendant on a particular market value for products that were believed to be PFOA-free. But because Defendant delivered products that contained PFOA and other PFAS, Plaintiff and the Class effectively paid a price that was higher than the market price to which they and Defendant had agreed.

72.   In other words, the Class Products are worth less than Plaintiff and the Class paid for them and the cost of the Products would have been lower absent Defendant's false and misleading representations/omissions.

73.   Thus, through the use of misleading representations/omissions as to the character and design of the Class Products—thereby misrepresenting the products' true value—Defendant obtained enhanced negotiating leverage allowing it to command a price Plaintiff and the Class would not have paid had they been fully informed.

74.   Absent the false and misleading representations/omissions, Plaintiff and the Class would not have purchased the Class Products or would only have purchased the products if offered at a lower price that reflected their true value.

75.   By use of its misleading marketing and labeling claims, Defendant created increased market demand for the Class Products and increased its market share relative to what its demand and share would have been had Defendant marketed and labeled the products truthfully.

76.   Plaintiff and the Class lost money as a result of Defendant's misrepresentations/omissions because they did not receive what they reasonably believed they were paying for, while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

77.   Plaintiff and the Class detrimentally altered their position and suffered damages in an amount that, at the very least, is commensurate with difference between the reasonable or fair market value of the Class Products for which Plaintiff and the Class paid, and the actual value of the Class Products that Defendant delivered.

78.   The value of Defendant's PFOA-free Representations—*i.e.*, the value that a reasonable consumer would place on the Class Products' purportedly PFOA-free character—can be determined and expressed in terms of dollar value. Accordingly, damages are capable of determination on a class-wide basis.

## V.   CLASS ACTION ALLEGATIONS

79.   Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to California Code of Civil Procedure § 382, on behalf of himself and the members of the following **Nationwide Class**:

> During the maximum period permitted by law, all persons residing in the United States who purchased the Class Products.

80.   In addition, or alternatively, Plaintiff brings this action on behalf of himself and the members of the following **California Subclass**:

> During the maximum period permitted by law, all persons residing in the State of California who purchased the Class Products.

81.   Specifically excluded from these definitions are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (b) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (c) class counsel; and (d) any person who timely and properly excludes himself or herself from the Class. Plaintiff reserves the right to amend the Class and Subclass definitions as necessary.

82.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class and Subclass members would use to prove those elements in individual actions alleging the same claims.

83.   For convenience and simplicity, Plaintiff refers to the National Class and the California Subclass collectively as "the Class" or "Class members," except where they are expressly distinguished.

84.   **Numerosity.** The members of each proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

85.   Although the precise number of Class members is unknown to Plaintiff, upon information and belief the Class would easily number in the thousands if not tens of thousands. Meyer Corporation identifies itself as a "global innovator" with "products that can be found around the world on over 90 digital channels and in thousands of stores."[22] Although the Class Products are only one line of Meyer's products, these representations suggest the breadth of Meyer's market share and, thus, the relatively large share the Class Products may be expected to garner in their market niche, all of which suggests each Class would be comprised of numerous and geographically dispersed members.

86.   The true size of the Class may be ascertained through Defendant's business records, those of its authorized retailers, and by other traditional means including notice publication.

87.   **Typicality.** Plaintiff's claims are typical of other Class members' claims because Plaintiff and the Class all purchased Class Products that are substantially similar in design and were uniformly labeled and marketed. Plaintiff and the Class all received less than the full value of Class Products they believed they were purchasing based upon uniform misrepresentations/omissions. And reasonable consumers, including Plaintiff and the Class alike, would not have purchased the Class Products or paid as much had Defendant not misrepresented them as PFOA-free.

88.   Plaintiff and the Class all were exposed to the same or substantially similar misrepresentations and to the same omissions—namely, concealment of the presence

---

[22] https://meyerus.com/about/

of PFOA in the purportedly PFOA-free Class Products. Defendant systematically misrepresented the Class Products to all prospective consumers, including Plaintiff and all Class members.

89.   Plaintiff and each Class member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would make similar legal and factual arguments to establish Defendant's liability were they to proceed on an individual basis.

90.   There are no defenses available that are unique to any named Plaintiff. Defendant has engaged in systematic fraudulent behavior that was deliberate and results in the same injury to all Class Members.

91.   **Commonality.** Plaintiff and the Class are united by a community of interest in obtaining appropriate remedies, including damages capable of determination on a class-wide basis, potential injunctive relief injunctive relief, and, alternatively, restitution. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class members. These include:

a.   whether Defendant misrepresented the Class Products as PFOA-free and concomitantly failed to disclose the material fact that the Class Products in fact contain PFOA and other PFAS;

b.   whether the Class Products contain PFOA and other PFAS;

c.   whether and when Defendant knew (or when it should have first known) that the Class Products contain PFOA and other PFAS;

d.   whether Defendant's labeling and marketing representations and omissions were false, misleading and/or reasonably likely to deceive ordinary reasonable consumers;

e.   whether an ordinary reasonable consumer would have paid less money, or any money at all, for the Class Products in the absence of Defendant's misrepresentations/omissions;

f.   the difference in value between the Class Products as represented for sale (PFOA-free) and the actual value of the Class Products (not PFOA-free);

g.   whether Defendant's misrepresentations/omissions would be material to a reasonable consumer;

h.   whether Defendant engaged in false or misleading advertising;

i.   whether Defendant engaged in unfair, unconscionable, or deceptive trade practices and whether it violated the various statutes and other laws cited in Plaintiff's legal counts;

j.   whether Defendant breached any warranty with respect to the Class Products;

k.   whether Plaintiff and the Class are entitled to damages and/or restitution and, if so, the amount of such damages or restitution;

l.   whether injunctive relief is appropriate under the circumstances;

m.   whether Defendant was unjustly enriched at the expense of Plaintiff and the Class as a result of its misconduct; and

n.   whether Plaintiff and the other Class members are entitled to declaratory or other equitable relief.

92.   These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class member's claims.

93.   The factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

94.   **Adequate Representation.** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members. Plaintiff

1   commits to protecting the interests of the Class without exercising personal interest or

2   otherwise acting in a manner inconsistent with the best interests of the Class generally.

3   Plaintiff has retained attorneys with exceptional experience in complex litigation,

4   including extensive class action experience and experience in handling consumer

5   protection cases, as well as extensive litigation and trial experience in claims against

6   the chemical industry involving PFOA (C8). Plaintiff and his attorneys will

7   responsibly, ethically, and vigorously advocate on behalf of the Class and Plaintiff's

8   counsel have ample resources to do so.

9       95.   Plaintiff has no interests antagonistic to those of the Class.

10      96.   **Predominance.** The common questions of law or fact identified above are

11   substantially similar and predominate over those questions affecting only specific

12   members of the Class and Subclass.

13      97.   **Superiority.** A class action is superior to any other means available to the

14   Class to obtain relief.

15      98.   The damages suffered by individual Class members are relatively small

16   compared to the burden and expense of individual litigation of the claims described

17   here against Defendant so that making the class whole in the absence of a class action

18   is unlikely and impracticable.

19      99.   This means Class members have relatively less interest in individually

20   controlling the prosecution of separate actions and it cannot be said that the interests

21   of individuals pursuing individual cases in conducting separate lawsuits is so strong as

22   to call for denial of a class action. Without class certification, the prosecution of

23   separate consumer actions by individual Class members would be impracticable and

24   financially difficult and, therefore, unlikely.

25      100.   Denial of class treatment runs the risk of piecemeal litigation establishing

26   incompatible standards of conduct for Defendant or, alternatively, discouraging the

27   prosecution of meritorious but small claims and otherwise substantially impairing the

28   ability of Class members (and Defendant) to protect their rights and interests.

101.   Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

102.   Likewise, the judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

103.   Individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and to the courts, including this Court. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

104.   Additionally, the claims are manageable, each Subclass claim is governed by one state's law and those laws are consonant with one another. Defendant's misconduct impacts all Class members, whose losses are capable of calculation on a class-wide or Subclass-wide basis.

105.   Ultimately, the class action procedure is superior to other methods of adjudicating the Plaintiff and Class members' claims. This is precisely why class actions exist—class treatment facilitates the fair, uniform and efficient adjudication of claims, as it would here, and it promotes judicial economy while avoiding the undue financial, administrative and procedural burdens that necessarily would result from a multiplicity of individual actions.

106.   **Injunctive and Declaratory Relief.** Defendant acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the Class in its entirety.

107.   **Particular Issues.** Any or all of the issues identified above are appropriate for certification because each is particular and common to the Class and

1   the resolution of each or all would materially advance the disposition of this action

2   and the parties' interests.

3       108.   Plaintiff knows of no difficulty to be encountered in the maintenance of

4   this action that would preclude its maintenance as a class action.

5   **VI.   CLAIMS FOR RELIEF**

6   **COUNT ONE**

7   **Unjust Enrichment/Restitution**
(On Behalf of the Nationwide Class and the California Subclass)

8       109.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully

9   included herein.

10      110.   Plaintiff brings this count on behalf of himself, the Nationwide Class, and

11  the California Subclass (referred to collectively in this Count as "the Class").

12      111.   This Count is alleged in the alternative to Plaintiff's claims for legal

13  relief.

14      112.   Plaintiff and the Class conferred a monetary benefit on Defendant in

15  purchasing the Class Products.

16      113.   Defendant was aware of this benefit, voluntarily accepted it, and has

17  retained and appreciated this benefit, to which it is not entitled, at the expense of

18  Plaintiff and the Class.

19      114.   Defendant either knew or should have known that payments rendered by

20  Plaintiff and the Class were given and received with the expectation that the Class

21  Products free of PFOA and other PFAS when that was not so. It is inequitable for

22  Defendant to retain the benefit of payments under these circumstances.

23      115.   For this reason and others set forth in this Complaint, the circumstances

24  are such that it would be inequitable and unfair for Defendant to retain the full amount

25  of the benefit conferred upon it by Plaintiff and the Class, and fairness demands that

26  Defendant pay for the benefit.

27      116.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff

28  and the Class in an amount not less than an amount commensurate with the difference

1   between the reasonable or fair market value of the Class Products for which Plaintiff

2   and the Class paid, and the actual value of the Class Products that Defendant

3   delivered.

4      117.   Plaintiff accordingly seeks on behalf of himself and the Class restitution

5   from Defendant and an order of this Court that proportionally disgorges all profits,

6   benefits, and other compensation unjustly obtained by Defendant from its wrongful

7   conduct and that establishes a constructive trust from which Plaintiff and Class

8   Members may seek restitution.

9                          **COUNT TWO**
10   **Violation of the California Consumer Legal Remedies Act**
     **("CLRA"), Civil Code §§ 1750, *et seq.***
11            (On Behalf of the California Subclass)

12      118.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully

13   included herein.

14      119.   Plaintiff brings this count on behalf of himself and the California

15   Subclass (referred to in this Count as "the Subclass").

16      120.    The conduct described herein took place in the State of California and

17   constitutes unfair methods of competition or deceptive acts or practices in violation of

18   the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

19      121.   The CLRA applies to all claims of the Subclass because Defendant's

20   conduct that violates the CLRA occurred within the State of California.

21      122.   Plaintiff and the Subclass are "consumers" as defined by Civil Code §

22   1761(d).

23      123.   Defendant is a "person" as defined by Civil Code § 1761(c).

24      124.   The Class Products are "goods" as defined by Civil Code § 1761(a).

25      125.   Plaintiff's and the Subclass's purchases of the Class Products are

26   "transactions" as defined by Civil Code 25 § 1761(e).

27

28

1    126.   Defendant's representations and omissions concerning the quality,

2   benefits, and character of the Class Products (PFOA-free) were false and/or

3   misleading, as alleged herein.

4    127.   As set forth below, the CLRA deems the following unfair methods of

5   competition and unfair or deceptive acts or practices undertaken by any person in a

6   transaction intended to result or which does result in the sale or lease of goods or

7   services to any consumer as unlawful:

8       a.   representing that goods have characteristics, ingredients, or benefits that

9            they do not have, § 1770(a)(5);

10      b.   representing that goods are of a particular standard, quality, or grade, or that

11           goods are of a particular style or model, if they are of another, § 1770(a)(7);

12      c.   advertising goods with intent not to sell them as advertised; § 1770(a)(9);

13           and

14      d.   representing the subject of a transaction has been supplied in accordance

15           with a previous representation when it was not. § 1770(a)(16).

16    128.   Defendant engaged in unfair competition or unfair or deceptive acts or

17   practices in violation of these provisions when it represented through Class Product

18   labeling and marketing, and through other express representations including those

19   identified above, that the Class Products were PFOA-free when, in fact, the products

20   contain PFOA and other PFAS.

21    129.   Defendant's false and misleading representations and omissions were

22   made to the entire Subclass and were such that a reasonable consumer would attach

23   importance to them in making his or her purchasing decision.

24    130.   Defendant knew or should have known its representations and omissions

25   were material and were likely to mislead consumers, including Plaintiff and the

26   Subclass and that they were likely to mislead any reasonable consumer acting

27   reasonably under the circumstances, to his or her detriment.

28

131.   Defendant engaged in uniform marketing efforts to reach Subclass members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and use the Class Products. Defendant's packaging, labeling, marketing, website, and retailer product identification and specifications, contain numerous false and misleading statements regarding the quality, benefits, and character of the Class Products, including the specific misrepresentations alleged above.

132.   In making these misrepresentations, Defendant simultaneously omitted and concealed information and material facts from Plaintiff and the Subclass— namely, that the Class Products contain PFOA and other PFAS.

133.   In their purchase of the Class Products, Plaintiff and the Subclass relied on Defendant's representations and omissions. Had Defendant disclosed the true nature of Class Products (that in fact they contain PFOA and other PFAS), Plaintiff and the Subclass would not have purchased the products or would have paid substantially less for them.

134.   Pursuant to Civil Code § 1782(a), on November 7, 2022, Plaintiff Howard Clark provided written notice to Defendant via certified mail through the United States Postal Service demanding corrective actions pursuant to the CLRA. The 30-day response period has not elapsed; thus Plaintiff seeks no damages pursuant to this Count, but may amend this Complaint at the appropriate time to claim damages.

135.   In accordance with Civil Code § 1780, Plaintiff seeks a declaration that Defendant's conduct violates the CLRA and Plaintiff seek injunctive relief requiring Defendant to cease and desist from further misrepresenting the Class Products are PFOA-free as well as reasonable attorney's fees and costs, and any further injunctive or equitable relief the Court deems proper equitable relief for Defendant's violations of the CLRA.

136.   If Defendant fails to respond to Plaintiff's notice letter, fails to agree to rectify the problems associated with the acts and omissions detailed above, or fails to give timely notice to all affected consumers, Plaintiff reserves the right to amend the

1   Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate.

2   As to this cause of action, at this time, Plaintiff seeks only equitable relief as described

3   above.

4       137.   Attached as Exhibit A is the affidavit of Plaintiff pursuant to Cal. Civ.

5   Code § 1780(d).

**COUNT THREE**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
(On Behalf of the California Subclass)

9       138.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully

10  included herein.

11      139.   Plaintiff brings this count on behalf of himself and the California

12  Subclass (referred to in this Count as "the Subclass").

13      140.   The conduct described herein took place within the State of California

14  and constitutes deceptive or false advertising in violation of California Business and

15  Professions Code § 17500.

16      141.   The FAL provides that "[i]t is unlawful for any person, firm, corporation

17  or association, or any employee thereof with intent directly or indirectly to dispose of

18  real or personal property or to perform services" to disseminate any statement "which

19  is untrue or misleading, and which is known, or which by the exercise of reasonable

20  care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

21      142.   It also is unlawful under the FAL to make or disseminate any

22  advertisement that is "untrue or misleading, and which is known, or which by the

23  exercise of reasonable care should be known, to be untrue or misleading." *Id.*

24      143.   Defendant's representations and omissions in its labeling, packaging, and

25  marketing/advertising concerning the quality, benefits, and character of the Class

26  Products (PFOA-free) were false and/or misleading, as alleged throughout this

27  Complaint.

28

144.   In packaging, labeling, marketing, advertising and selling the Class Products, Defendant represented to Plaintiff and the Subclass that the Class Products are free of PFOA when in fact, and as Defendant knew or should have known, the Class Products contained PFOA and other PFAS. In so doing, Defendant omitted and concealed the presence of PFOA and PFAS in the Class Products.

145.   At the time of its misrepresentations, Defendant was either aware the Class Products contained PFOA and harmful PFAS, or was aware that it lacked the information and/or knowledge required to make PFOA-free representations truthfully. Defendant concealed this information from Plaintiff and the Subclass.

146.   Defendant's label and marketing descriptions of the Class Products were false, misleading, and likely to deceive Plaintiff and other reasonable consumers acting reasonably in the circumstances.

147.   Defendant's conduct therefore constitutes deceptive or misleading advertising.

148.   Plaintiff has standing to pursue claims under the FAL because they saw and relied on Defendant's misrepresentations (and relied upon the concomitant omissions) when selecting and purchasing the Class Products.

149.   Plaintiff and the Subclass purchased the Class Products in reliance on the statements made in Defendant's labeling and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and character of the Class Products.

150.   Had Defendant disclosed the true nature of Class Products (that in fact they contain PFOA and other PFAS), Plaintiff and the Subclass would not have purchased the products or would have paid substantially less for them.

151.   As a direct and proximate result of Defendant's acts and omissions, it has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and the Subclass who purchased the Class Products.

29

152.   Plaintiff and the Subclass seek restitution and disgorgement of any monies acquired or retained by Defendant by means of its deceptive or misleading representations, including monies already obtained from Plaintiff and Subclass as provided for by the California Business and Professions Code § 17500.

### COUNT FOUR
**Violations of the California Unfair Competition Law
("UCL"), Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
(On Behalf of the California Subclass)

153.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

154.   Plaintiff brings this count on behalf of himself and the California Subclass (referred to in this Count as "the Subclass").

155.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

156.   Plaintiff and Class Members who purchased the Class Products suffered economic injury because Defendant made misrepresentations (and concomitant omissions) regarding the products' true quality, benefits and character. Had Plaintiff and the Subclass known that Defendant misrepresented and omitted material information regarding the Class Products, they would not have purchased the Class Products or they would have paid substantially less for them.

157.   In packaging, labeling, marketing, advertising and selling the Class Products, Defendant represented to Plaintiff and the Subclass that the Class Products are free of PFOA when in fact, and as Defendant knew or should have known, the Class Products contain PFOA and other PFAS. In so doing, Defendant omitted and concealed the presence of PFOA and PFAS in the Class Products.

158.   At the time of its misrepresentations, Defendant was either aware the Class Products contained PFOA and harmful PFAS, or was aware that it lacked the information and/or knowledge required to make PFOA-free representations truthfully. Defendant concealed this information from Plaintiff and the Subclass.

159.   Defendant's label and marketing descriptions of the Class Products were false, misleading, and likely to deceive Plaintiff and other reasonable consumers acting reasonably in the circumstances.

160.   Defendant's conduct, as alleged herein, violates the laws and public policies of California, as set out in the preceding paragraphs of this complaint.

161.   There is no benefit to consumers or to competition by allowing Defendant to deceptively package, label, and market/advertise the Class Products. In fact, Defendant's conduct is anti-competitive because it either disadvantages competitors who play by the rules or incentivizes them to deceive consumers as Defendant has.

162.   Plaintiff and the Subclass had no way to know that the Class Products deceptively packaged, labeled, and marketed/advertised, *i.e.*, that the products are not in fact PFOA-free. Plaintiff and the Subclass were not aware that the products contain PFOA and other PFAS and could not practicably have determined that was so before purchasing the products. Thus, Plaintiff and the Subclass could not have reasonably avoided the harm they suffered.

163.   The gravity of the harm suffered by Plaintiff and the Subclass outweighs any legitimate justification, motive or reason for labeling, packaging and marketing/advertising the Class Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, and unscrupulous and offend the established public policies and they are substantially injurious to Plaintiff and the Subclass.

164.   Defendant's misconduct, as alleged above and throughout this Complaint, was and is likely to deceive reasonable consumers by obfuscating the true nature of the Class Products, and thus the misconduct violated and continues to violate Cal. Bus. & Prof. Code §§ 17500, *et seq.*

165.   As a result of Defendant's above unlawful, unfair, and fraudulent acts and practices, Plaintiff, on behalf of himself and the Subclass—and as appropriate, on

1   behalf of the general public—seeks equitable relief, including full restitution of all

2   improper revenues and ill-gotten profits derived from Defendant's wrongful conduct

3   to the fullest extent permitted by law or in equity.

### COUNT FIVE
### Breach of Express Warranty
### Cal. Com. Code §§ 2313, *et seq.*
(On Behalf of the California Subclass)

7   166.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully

8   included herein.

9   167.   Plaintiff brings this cause of action on behalf of himself and the

10  California Subclass (referred to in this Count as "the Subclass").

11  168.   Defendant designed, designs, manufactured, labeled, marketed,

12  distributed, and sold the Class Products as part of its regular course of business.

13  169.   Defendant made affirmations of fact and promises on the Class Products

14  labels and packages and through other external, public communications, including

15  marketing communications.

16  170.   As set forth herein, Defendant made express representations to Plaintiff

17  and the Class that the Class Products were "PFOA FREE."

18  171.   Defendant made the foregoing express representations and warranties to

19  all consumers, which became the basis of the bargain between Plaintiff, the Subclass,

20  and Defendant.

21  172.   Plaintiff and the Subclass purchased the Class Products through

22  authorized retailers including Macy's and Amazon, as alleged in detail above with

23  respect to named Plaintiff.

24  173.   Defendant breached the foregoing express warranties by placing the

25  Class Products into the stream of commerce and selling them to consumers, when—

26  contrary to the express warranties—the Class Products contain PFOA and more than

27

28

1   dozen other PFAS, and otherwise fail to conform to the properties they were

2   represented to possess.

3       174.   The presence of PFOA and other PFAS rendered the Class Products unfit

4   for their intended use and purpose and substantially impaired the use and value of the

5   Class Products.

6       175.   Defendant had superior knowledge regarding the presence of PFOA and

7   other PFAS in the Class Products. Plaintiff and the Subclass were not aware that the

8   products contain PFOA and other PFAS and could not practicably have determined

9   that was so before purchasing the products.

10      176.   Privity exists because the representations were made pursuant to a sale of

11  goods.

12      177.   Plaintiff and the Class members reasonably relied on the express

13  warranties by Defendant because the warranties were material to Plaintiff's and the

14  Class' purchasing decisions and were, in fact, the primary motivating factor behind

15  those decisions, as a reasonable consumer's primary concern when purchasing PFOA-

16  free nonstick cookware is that the cookware not contain PFOA.

17      178.   As a result of Defendant's breaches of its express warranties, Plaintiff

18  and the Class sustained damages as the product they received was not worth the price

19  they paid for it. Plaintiff alleges that the product was worthless because no reasonable

20  consumer would pay for cookware that contained PFOA and, alternatively, that they

21  paid a price premium for the allegedly PFOA-free cookware, in which they did not

22  receive the promised consideration. In reality, a reasonable consumer would pay

23  significant money simply to avoid or limit exposure to forever chemicals like PFOA;

24  accordingly, exposing unsuspecting consumers to PFOA caused them significant

25  damages.

26      179.   As a result of Defendant's breach of these warranties, Plaintiff and the

27  Subclass are entitled to legal and equitable relief including damages, costs, attorney's

28  fees, rescission, and all such other relief available in law or in equity.

**COUNT SIX**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314, *et. seq.***
(On Behalf of the California Subclass)

180.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

181.   Defendant is a merchant who sold nonstick cookware, a good, to Plaintiff and the Class members.

182.   As such, the sale of these goods was subject to the implied warranty of merchantability, under which Defendant warranted that the goods met the following requirements: (1) passed without objection in the trade under the contract description, (2) were of fair average quality within the description, (3) were fit for the ordinary purposes for which such goods are used, (4) were adequately contained, packed, and labeled as the agreement may require, and (5) conformed to the promises or affirmations of fact made on the container or label if any, among other requirements.

183.   Defendant breached the implied warranty of merchantability, violating each of the promises set forth above, because it sold Plaintiff and the Class Members nonstick cookware, marketed as being "PFOA FREE" on their labeling and elsewhere, which in fact contained PFOA. Accordingly, the goods (1) did not pass without objection under the contract description, (2) were not of fair average quality within the description, (3) were not fit for the ordinary purposes for which such goods are used, (4) were not adequately labeled, and (5) did not conform the representations contained on the label.

184.   As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class sustained damages because they paid the purchase price for goods which were contained materially misleading representations and omissions and/or paid more for the Products than they would have had they known the Products contained PFOA.

## VII.   RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, including the respective Class and Subclasses proposed herein, seek the following relief against Defendant:

  a.   an order certifying the Class, naming Plaintiff as representative of the Class and their respective Subclasses, and appointing Plaintiff's attorneys as Class Counsel;

  b.   an order declaring that Defendant's conduct violates the statutes referenced herein;

  c.   an order and judgment in favor of Plaintiff and the proposed Class and Subclasses on all respective counts asserted herein;

  d.   compensatory, statutory, and punitive damages and applicable penalties in amounts to be determined by the Court and/or jury;

  e.   injunctive relief, restitution, disgorgement, penalties, and other monetary and non-monetary equitable relief as pled herein;

  f.   prejudgment and post-judgment interest where available on all amounts awarded;

  g.   reasonable attorneys' fees, expenses, and costs of suit; and

  h.   all other relief available at law or in equity.

## VIII.  JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: December 12, 2022      Respectfully submitted,

_s/ Michael H. Pearson_
Daniel L. Warshaw (CA Bar No. 185365)
Michael H. Pearson (CA Bar No. 277857)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
dwarshaw@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN BN 0387900)*
**PEARSON, SIMON & WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
*mweiner@pswlaw.com*

Matthew D. Schultz (FL BN 640328)*
Rebecca K. Timmons (FL BN 121701)*
**LEVIN PAPANTONIO RAFFERTY**
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
*mschultz@levinlaw.com*
*btimmons@levinlaw.com*

Alex Straus (CA Bar No. 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
16748 McCormick Street
Los Angeles, California 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
*astraus@milberg.com*

Rachel L. Soffin* (FL BN 18054)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**
800 S. Gay St., Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
*rsoffin@milberg.com*

Erin J. Ruben* (VA BN 73073, NC BN 39184)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
*eruben@milberg.com*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Harper T. Segui* (GA BN 096540, SC BN 77730)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
*hsegui@milberg.com*

*Attorneys for Plaintiff and the Putative Class*

*\*Pro Hac Vice* application forthcoming

# EXHIBIT A

## DECLARATION OF HOWARD CLARK

**I, HOWARD CLARK, DECLARE:**

1.      On or about January 2022, I purchased an Anolon 8-inch fry pan and 12-inch skillet (the "Products") at a Macy's department store located in San Francisco, California.

2.      At the time of my purchase and review of the Products, I was in the county of San Francisco, California, where I also currently reside.

3.      Also, it is my understanding that Defendant, Meyer Corporation, does business in San Francisco County and is headquartered in Solano County, California.

I declare under penalty of perjury under the laws of California and the United States of America, that the forgoing is true and correct, and that this declaration was executed on November 1, 2022.

By: _Howard Clark_
Howard Clark (Nov 1, 2022 14:43 PDT)

HOWARD CLARK

1

**EXHIBIT  B**

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **MAY 17, 2023** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

---

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

**EXHIBIT  C**

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Michael H. Pearson (CA Bar No. 277857) PEARSON, SIMON & WARSHAW, LLP<br>15165 Ventura Boulevard, Suite 400, Sherman Oaks, California 91403<br><br>TELEPHONE NO.: (818) 788 8300     FAX NO. *(Optional):* (818) 788-8104<br>E-MAIL ADDRESS: mpearson@pswlaw.com<br>ATTORNEY FOR *(Name):* Howard Clark, Plaintiff | *FOR COURT USE ONLY*<br><br>ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**12/15/2022**<br>**Clerk of the Court**<br>BY: BOWMAN LIU<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: Same as Above
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Howard Clark, individually and on behalf of all others similarly situated v. Meyer Corporation, U.S.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>CGC-22-603458 |
|---|---|---|
| [x] **Unlimited**  [ ] **Limited**<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[x] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [ ] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4.  Number of causes of action *(specify):*  6
5.  This case [x] is  [ ] is not  a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/12/2022

Michael H. Pearson
_____
(TYPE OR PRINT NAME)                    ▶ *(signature)*                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

*Page 1 of 2*

**NOTICE**
*   Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
*   File this cover sheet in addition to any cover sheet required by local court rule.
*   If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
*   Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**EXHIBIT  D**

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Dainel L. Warshaw (SBN 185365); Michael H. Pearson (SBN 277857)<br>**PEARSON WARSHAW, LLP**<br>15165 VENTURA BLVD., Suite 400<br>SHERMAN OAKS , CA 91403<br>TELEPHONE NO.: (818) 788-8300        FAX NO. *(Optional)*: (818) 788-8104<br>E-MAIL ADDRESS *(Optional)*: kadams@pwfirm.com<br>ATTORNEY FOR *(Name)*: Plaintiff and the Proposed Class | FOR COURT USE ONLY<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**01/11/2023**<br>**Clerk of the Court**<br>BY: YOLANDA TABO-RAMIREZ<br>Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN FRANCISCO
STREET ADDRESS:  400 McAllister Street
MAILING ADDRESS:  Same as Above
CITY AND ZIP CODE:  San Francisco, 94102
BRANCH NAME:  Civic Center Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Howard Clark, et al.<br>DEFENDANT/RESPONDENT:  Meyer Corporation, U.S. | CASE NUMBER:<br>**CGC-22-603.458** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>PEAWA-0165014.KW |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☐ Other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*
      Meyer Corporation, U.S.

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Agent for Service, CSC Lawyers Inc. Services, Koy Saechao - Process Intake Clerk for CSC Lawyers Inc. Services

4. Address where the party was served: 2710 Gateway Oaks Services, Suite 150N , Sacramento , CA 95833

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 01/09/23      (2) at *(time):* 2:39 pm
   b. ☐ **by substituted service.** On *(date):*           at *(time):*           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)**  a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code  Civ.Proc., § 415.20).  I mailed the documents on *(date):* //   from *(city):*           **or**   ☐ a declaration of mailing is attached.

Page 1 of 2

| PLAINTIFF/PETITIONER: Howard Clark, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Meyer Corporation, U.S. | CGC-22-603.458 |

(5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:                (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgement of Receipt).* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify)*:

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify)*: Meyer Corporation, US

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: Robert J. Mason

  b. Address: 1605 W. Olympic Blvd., Suite 800, Los Angeles, California 90015

  c. Telephone number: (213) 975-9850

  d. **The fee** for service was: $205.00

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner ☐ employee ☑ independent contractor

      (ii) Registration No.: 03-007

      (iii) County: Placer

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/10/2023

Robert J. Mason
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

**PEARSON WARSHAW, LLP**
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

### **HOWARD CLARK V. MEYER CORPORATION**
### **CGC-22-603458**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 15165 Ventura Boulevard, Suite 400, Sherman Oaks, CA 91403.

On January 11, 2023, I served true copies of the following document(s) described as **PROOF OF SERVICE OF SUMMONS** on the interested parties in this action as follows:

### **SEE ATTACHED SERVICE LIST**

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Pearson Warshaw, LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Sherman Oaks, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 11, 2023, at Sherman Oaks, California.

_E. Grant_
_____
Ellowene J. Grant

986805.1

1

**SERVICE LIST**
**HOWARD CLARK V. MEYER CORPORATION**
**CGC-22-603458**

2

3    Meyer Corporation, U.S.                          Defendant
     c/o: CSC Lawyers Inc. Services
4    2710 Gateway Oaks Services, Suite 150N
     Sacramento, CA 95833
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**EXHIBIT  E**

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   JON P. KARDASSAKIS  (SBN 90602)
2     E-Mail: Jon.Kardassakis@lewisbrisbois.com
   633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
   Telephone:    213.250.1800
4  Facsimile:    213.250.7900

5  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   MICHAEL K. JOHNSON, SB# 130193
6     E-Mail: Michael.Johnson@lewisbrisbois.com
   2185 North California Boulevard, Suite 300
7  Walnut Creek, California 94596
   Telephone:    925.357.3456
8  Facsimile:    925.478.3260

9  Attorneys for Defendant
   MEYER CORPORATION, U.S.
10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                    COUNTY OF SAN FRANCISCO

13

14  HOWARD CLARK, individually and on          **Case No. CGC-22-603458**
    behalf of all other similarly situated,
15                                             CLASS ACTION
              Plaintiff,
16                                             **DEFENDANT MEYER CORPORATION,**
         vs.                                   **U.S.'S ANSWER TO COMPLAINT**
17
    MEYER CORPORATION, U.S.,
18                                             Action Filed:  December 13, 2022
              Defendant.
19

20

21         Defendant Meyer Corporation, U.S. ("Defendant") hereby answers the Class Action

22  Complaint ("Complaint") of Plaintiff Howard Clark, individually and on behalf of all others

23  similarly situated ("Plaintiff"), as follows:

24                            **GENERAL DENIAL**

25         Under the provisions of section 431.30 of the California Code of Civil Procedure,

26  Defendant denies, generally and specifically, each and every allegation contained in the

27  Complaint, and the whole thereof, and each and every alleged cause of action contained therein

28  and further denies that Plaintiff and / or putative class members sustained damages in the sum or



4884-4807-0735.1

1  sums alleged or in any sum or at all by reason of any act, breach, or omission on the part of the

2  answering Defendant.

### AFFIRMATIVE DEFENSES

4  By way of further answer and affirmative defenses, Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

7  1.  Neither the Complaint nor any purported causes of action alleged therein state a

8  claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

(No Actual Injury)

11  2.  Plaintiff and putative class members did not suffer any actual injury and therefore

12  cannot recover damages.

### THIRD AFFIRMATIVE DEFENSE

(No Actual Notice)

15  3.  Some or all of Plaintiff's and putative class members' claims for damages or other

16  relief are barred because Plaintiff and/or putative class members did not provide adequate notice

17  or pre-suit notice.

### FOURTH AFFIRMATIVE DEFENSE

(Federal Preemption)

20  4.  Plaintiff's and putative class members' state law claims are barred, in whole or in

21  part, by preemption of federal law.

### FIFTH AFFIRMATIVE DEFENSE

(Economic Loss Doctrine)

24  5.  Plaintiff's and putative class members' claims are barred by the economic loss

25  doctrine.

### SIXTH AFFIRMATIVE DEFENSE

(Speculative Damages)

28  6.  Plaintiff's and putative class members' damages or losses, if any, are speculative



1   and/or uncertain, and therefore, not compensable.

2   **SEVENTH AFFIRMATIVE DEFENSE**

3   (Estoppel)

4   7.      Plaintiff and putative class members may be barred, in whole or in part, from

5   recovery because they have made statements or taken actions which estop them from asserting

6   their claims.

7   **EIGHTH AFFIRMATIVE DEFENSE**

8   (Comparative fault of Third Parties)

9   8.      To the extent Plaintiff or putative class members have alleged any damage, the sole

10  and proximate cause of the alleged damage sustained by Plaintiff or the putative classes results

11  from the actions, inactions or negligence, in whole or in part, of persons other than Defendant for

12  whose actions, inactions or negligence, in whole or in part, Defendant is in no way liable.  Plaintiff

13  and the putative classes are not, therefore, entitled to recover from Defendant in this action.

14  **NINTH AFFIRMATIVE DEFENSE**

15  (Intervening Cause)

16  9.      Plaintiff and putative class members may be barred from recovery, in whole or in

17  part, due to the intervening cause of another party.

18  **TENTH AFFIRMATIVE DEFENSE**

19  (Inadequate Class Representative)

20  10.     Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing

21  and is an inadequate class representative for the claims asserted.

22  **ELEVENTH AFFIRMATIVE DEFENSE**

23  (Uncertifiable Putative Class)

24  11.     Plaintiff's and putative class members' claims are barred because Defendant has

25  not engaged in actions of the kind alleged that are generally applicable to the proposed class, or

26  classes, and as such, this action is not properly maintainable and/or does not qualify for

27  certification under the requirements for a class action.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**TWELFTH AFFIRMATIVE DEFENSE**

(Common Questions of Law and Fact Do Not Predominate)

12.     Questions of law and fact common to the proposed classes do not predominate over the questions affecting individual members of the proposed classes and, to the contrary, numerous individual issues overwhelm the common issues.  Therefore, this action is not appropriate for certification as a class action.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Not Typical)

13.     Plaintiff's claims for the purported class are barred, in whole or in part, because Plaintiff cannot establish that his claims are typical of those of in the proposed class and therefore the Complaint cannot proceed as a class action.

**FOURTEENTH AFFIRMATIVE DEFENSE**

(No Numerosity)

14.     Plaintiff's claims, and those of the purported class, are barred, in whole or in part, because Plaintiff cannot establish that members of the putative class are so numerous that joinder is impracticable.

**FIFTEENTH AFFIRMATIVE DEFENSE**

(No Community of Interest)

15.     The class allegations in Plaintiff's Complaint are improper as a matter of law because there is no community of interest in the claims asserted by Plaintiff and those of the purported putative class.

**SIXTEENTH AFFIRMATIVE DEFENSE**

(Statute of Limitations)

16.     Plaintiff's claims and/or claims of putative class members are barred, in whole or in part, by the applicable statute or statutes of limitations.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

(Waiver)

17.     Defendant alleges that Plaintiff and/or some or all putative class members have



1  waived any and all claims that he, she, or they may have had against Defendant arising from the

2  transactions and occurrences set forth in the Complaint.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (No Restitution, Disgorgement or Injunctive Relief)

5  18.  Plaintiff's and putative class members' claims for restitution, disgorgement,

6  injunctive and other equitable relief are barred because Plaintiff and putative class members s have

7  an adequate remedy at law and do not face an imminent  threat of substantial harm, and the

8  Complaint fails to allege facts sufficient to entitle them to such relief.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (No Duty)

11  19.  Plaintiff's claims, and those of the putative class, are barred, in whole or in part,

12  because Defendant owed no duty to Plaintiff and the putative class members.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (No Attorneys' Fees)

15  20.  Plaintiff has not alleged facts or a legal theory demonstrating entitlement to an

16  award of attorneys' fees and costs.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Limitation of Warranty)

19  21.  Plaintiff's claims, and those of the putative class, are barred, in whole or in part,

20  because Defendant limited its representations regarding the product.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (No Basis of Bargain)

23  22.  Plaintiff's claims, and those of the putative class, are barred, in whole or in part,

24  because Defendant's alleged representations regarding the product were not the basis of the

25  bargain between the Parties.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

#### (Failure to Mitigate Damages)

28  23.  Plaintiff and the putative class members, personally and/or by conduct of those


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

acting on their behalf, failed to mitigate their damages, if there were any, and such conduct bars or reduces any recovery by Plaintiff and the putative class members.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

#### (Good Faith Immunity)

24.     Plaintiff's Complaint, and each and every cause of action set forth therein alleged against Defendant, is barred, in whole or in part, because the alleged actions taken by Defendant, if any, were based on an honest, reasonable, and good faith belief in the facts as known and understood at the time and are therefore immune from any liability.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

#### (Conformance with Existing Laws and Regulations)

25.     All conduct and activities of Defendant alleged in the Complaint conformed to the statutes, government regulations and industry standards based upon the state of knowledge that existed at the time(s) alleged in the Complaint.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

#### (Laches)

26.     Plaintiff's Complaint is barred by the Doctrine of Laches.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

#### (Unclean Hands)

27.     Plaintiff's Complaint is barred by the Doctrine of Unclean Hands.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

#### (Unknown Defenses)

28.     Defendant is informed and believes and based thereon alleges it may have other separate and/or additional defenses of which they are not presently aware, and hereby reserves the right to assert them by amendment to this Answer as discovery continues.

### PRAYER FOR RELIEF

WHEREFORE, Defendant Meyer Corporation, U.S. prays for judgment as follows:

1.     Plaintiff and the putative class take nothing by reason of the Complaint on file


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    herein, and that said Complaint be dismissed with prejudice;

2        2.     Judgment be entered in favor of Defendant and against Plaintiff on all

3            claims for relief (and, if a class is certified, against the class as well);

4        3.     Defendant be awarded its costs of suit incurred herein;

5        4.     Defendant be awarded its attorneys' fees incurred by this action; and

6        5.     Defendant be awarded such other and further relief as the Court deems just and

7            proper.

8    DATE:  February 7, 2023        LEWIS BRISBOIS BISGAARD & SMITH LLP

9

10                      By: _____

11                         JON P. KARDASSAKIS
                           MICHAEL K. JOHNSON

12                         Attorneys for Defendant
                           MEYER CORPORATION, U.S.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

**CALIFORNIA STATE COURT PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

2

At the time of service, I was over 18 years of age and not a party to this action.  My
business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.

3

4

On February 7, 2023, I served true copies of the following document(s):

5

**DEFENDANT MEYER CORPORATION, U.S.'S ANSWER TO COMPLAINT**

6

I served the documents on the following persons at the following addresses:

7

**SEE ATTACHED SERVICE LIST**

8

The documents were served by the following means:

9

☒      (BY U.S. MAIL)  I enclosed the documents in a sealed envelope or package addressed to
the persons at the addresses listed above and:

10

11

☒        Placed the envelope or package for collection and mailing, following our ordinary
business practices.  I am readily familiar with the firm's practice for collection and processing
correspondence for mailing.  Under that practice, on the same day that correspondence is placed
for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal
Service, in a sealed envelope or package with the postage fully prepaid.

12

13

14

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

15

Executed on February 7, 2023, at Los Angeles, California.

16

17

18

19

_____
Annette M. Neblina

20

21

22

23

24

25

26

27

28



8

DEFENDANT MEYER CORPORATION, U.S.'S ANSWER TO COMPLAINT

SERVICE LIST

**Howard Clark v. Meyer Corporation, U.S.**
**Case No. CGC-22-603458**

MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN PLLC
16748 McCormick Street
Los Angeles, CA 91436
Telephone: 917.471.1894
 Facsimile: 310.496.3176

*Attorneys for Plaintiff and the*
*Proposed Class*

LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: 850.435.7118

*Attorneys for Plaintiff and the*
*Proposed Class*

PEARSON, SIMON & WARSHAW, LLP
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: 612.389.0600
Facsimile: 612.389.0610

*Attorneys for Plaintiff and the*
*Proposed Class*

PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818.788.8300
Facsimile: 818.788.8104

*Attorneys for Plaintiff and the*
*Proposed Class*



Client Care: **877.350.8698**

## Order Number: 5224081

**Contact:** Annette Neblina
**Address:** 633 W. FIFTH STREET 39th floor
              Los Angeles, CA 90071
**Phone:** 213-599-7739

## Requested Service

**Service:** eFile
**Type:** Concierge
**Urgency:** Standard
**Client Matter No./Ref:** 25267-13
**Claim #:**
**Insurance Company:**
**Insurance Adjuster:**

## Order Details

**Case Number:** CGC-22-603458
**Case Name:**
Howard Clark v. Meyer Corp, US
**General Description of Documents:**
Meyer Corp. US's Answer to State Complaint

## Attached Documents

Clark_-
_Meyer_Corp._US_s_Answer_to_State_Complaint.pdf

## Court

**Court** SFSC-SAN FRANCISCO

## Special Instructions

ADV 1ST APP. FEES. ADVANCE FEE Attached is Meyer Corp. US's Answer to State Complaint, which has been OCR'd. Please
advance First Appearance and Class Action fee. LBBS Matter No. 50710-03

© Copyright 2019, First Legal. All rights reserved. Private Investigator Licenses: CA PI: 24171 AZ PI: 1551710 NV PI-PS: 1452