

LEVIN PAPANTONIO RAFFERTY

Proctor | Buchanan | O'Brien
Barr | Mougey | P.A.

KIMBERLY LAMBERT ADAMS
BRIAN H. BARR
BRANDON L. BOGLE
W. TROY BOUK
WESLEY A. BOWDEN
VIRGINIA M. BUCHANAN
J. CALEB CUNNINGHAM
SARAH SHOEMAKE DOLES
(LICENSED ONLY IN MISSOURI AND ILLINOIS)
LAURA S. DUNNING
(LICENSED ONLY IN ALABAMA)
JAN K. DURRANI
JEFF R. GADDY
RACHAEL R. GILMER

BRENTON J. GOODMAN
CHELSIE L. GREEN
ROBERT M. LOEHR
M. JUSTIN LUSKO
NEIL E. McWILLIAMS, JR.
PETER J. MOUGEY
TIMOTHY M. O'BRIEN
MIKE PAPANTONIO
SARA T. PAPANTONIO
CHRISTOPHER G. PAULOS
EMMIE J. PAULOS
MADELINE E. PENDLEY
ALYSON M. PETRICK
(LICENSED ONLY IN MISSOURI AND WASHINGTON D.C.)

CARISSA PHELPS
(LICENSED ONLY IN CALIFORNIA)
A. RENEE PRESTON
PAGE A. POERSCHKE
(LICENSED ONLY IN ALABAMA)
MARK J. PROCTOR
TROY A. RAFFERTY
MATTHEW D. SCHULTZ
W. CAMERON STEPHENSON
THOMAS A. TAYLOR
REBECCA K. TIMMONS
CHRISTOPHER V. TISI
(LICENSED ONLY IN WASHINGTON, D.C. AND MARYLAND)
BRETT VIGODSKY
HILARY WOOD

LEFFERTS L. MABIE, JR. (1925-1996)
D.L. MIDDLEBROOKS (1926-1997)
DAVID H. LEVIN (1928-2002)
STANLEY B. LEVIN (1938-2009)
FREDRIC G. LEVIN (1937-2021)
LEO A. THOMAS (1934-2021)
RETIRED:
M. ROBERT BLANCHARD
MARTIN LEVIN
CLAY MITCHELL
OF COUNSEL:
WILLIAM F. CASH III
C. ANDREW CHILDERS
ROSS M. GOODMAN
BEN W. GORDON, JR.
LARUBY MAY
WILLIAM B. YOUNG, JR.

February 29, 2024

**VIA ECF**

The Honorable James Donato
United States District Court
Northern District of California

    Re:  **Discovery Letter Brief**
         *Howard Clark v. Meyer Corporation, U.S.*
         Case No. 3:23-CV-00581 (N.D. Cal.)

Dear Judge Donato:

    Pursuant to the Court's Standing Order, counsel for Plaintiff met and conferred with opposing counsel regarding this matter via Zoom on February 16, 2024.

    This consumer class action concerns nonstick cookware labeled as "PFOA-free" that in fact contain perfluorooctanoic acid ("PFOA"), a type of per- and polyfluoroalkyl substance ("PFAS"), as shown through liquid chromatography–mass spectrometry. The Parties are at an impasse regarding the production of responsive documents to Plaintiff's Request for Production No. 29, which was served in May 2023 and which requests SKUs and Universal Product Codes ("UPCs") for every formulation of each Class Product. *See* Ex. A (request and response excerpt).

    In response to RFP 29, Defendant stated that it would "comply with" the request and it eventually produced a spreadsheet that identifies Class Products by internal item (model) numbers, but Defendant has not fully satisfied the request because it failed to provide UPCs for the Class Products.[1] UPCs are used in identifying Class Products in connection with obtaining third-party sales and pricing data that will be used by Plaintiff's experts in presenting a methodology to calculate class-wide damages.

    Despite Defendant's response that it would "comply with" RFP 29, it instead raised for the first time on February 22—fifty days before the close of fact discovery—a claim of work product protection. The following is a timeline of relevant interactions:

    5/16/23:   Plaintiff served his first request for production, which included RFP 29.

---

[1] "Class Products" are defined as all Anolon nonstick cookware that was falsely labeled and advertised with representations of "PFOA FREE" and "PFOA-free nonstick." *See* Compl. at ¶ 4.

7/31/23: Defendant responded with boilerplate objections but agreed that, "[s]ubject to and without waiving these objections, Responding Party answers that upon entry of a suitable Protective Order, it will comply with this request."[2]

8/8/23: The Court approved the Parties' stipulated protective order. (ECF Nos. 35 (Stip. Protective Order) and 36 (Order)).

8/25/23: Counsel for Plaintiff requested a date certain for production of documents that were withheld pending entry of the protective order.

11/1/23: Counsel met and conferred regarding the outstanding production of documents and Defendant's objections to Plaintiff's requests. There was no objection to confirming by SKU and UPC the universe of Class Products, and in fact the Class Products identified by SKU and UPC was a mutually assumed basis for the conference as a way for moving forward with regard to producing sales data, pricing data, and exemplar labels, all of which would correlate to SKU and UPC.

12/19/23: After numerous communications over email, Defendant produced a spreadsheet (Clark_Meyer000010305) in response to RFP 29. The spreadsheet includes Defendant's internal Class Product Item Numbers, product descriptions, and unit sales/revenue by year (all requested). However, the spreadsheet does not identify UPCs. Importantly, metadata accompanying the spreadsheet shows it was created in July 2023 and is named "Anolon Brand_RFP 29 7.5.23." The data "tab" in the spreadsheet is labeled "RFP 29." One may thus infer the spreadsheet was created in order to respond to RFP 29.

1/24/24: After reviewing the spreadsheet (one of a few thousand documents produced in late December), Plaintiff raised the UPCs deficiency and suggested that Defendant add a column to the RFP 29 spreadsheet to include UPCs, though Plaintiff's counsel stated he was open to any approach that fully responded to RFP 29 (i.e., that provided the UPCs). Plaintiff stated this was an urgent matter because the UPCs are necessary for obtaining sales and pricing data in ongoing discussions with third-party retailers which, in turn, are important for Plaintiff's damages calculations. Plaintiff's counsel noted, "this is a choke-point for us on a key certification issue." Plaintiff followed up with Defendant by email on January 26, January 30, and February 1.

2/2/24: Defense counsel responded by email that the request was "in process" but could not provide an estimated production date.

2/12/24: Plaintiff again followed up seeking the UPCs, but received no response.

2/14/24: Plaintiff requested a meet and confer, in part to discuss the UPCs issue.

2/16/24: Counsel met and conferred over Zoom. Defendant represented that at least some responsive information would be produced no later than Tuesday, February 20, and agreed that upon Plaintiff's counsel's review, if RFP was not sufficiently satisfied, that Defense counsel would be willing to meet and confer further given the pressing

---

[2] Defendant later confirmed in writing that it did not withhold any documents pursuant to its "General Objections" and expressly stated when it withheld documents based on specific objections, which it did not indicate in response to RFP 29.

        need for Plaintiff's counsel to obtain this data to move forward with the third-party subpoenas Plaintiff already had served (seeking, among other items, sales and pricing data, which most retailers track using UPCs).

2/22/24:   Instead, in response to a follow-up email sent on February 21, 2024, Defense counsel emailed Plaintiff's counsel at 5:32 p.m. PST stating that "adding a column" to the spreadsheet for the UPCs could only occur by direction of counsel and thus would constitute work product. Defense counsel also stated that Defendant is not required to create new documents in order to respond to discovery and therefore Defendant would not "produce the UPCs as requested." Plaintiff's counsel responded two hours later raising the point that the spreadsheet itself was created for litigation and that addition of a UPC column was offered as one of any number of ways to resolve the issue. Plaintiff's counsel pointed out "we are now way behind on an issue I indicated from the start was a logjam for experts, etc." Defense counsel has not replied.

To be precise, Defendant has not actually objected to RFP 29 substantively; rather, Defendant belatedly objected to the Plaintiff's suggested method for satisfying RFP 29. There is no dispute that the spreadsheet produced to Plaintiff containing the Class Products was created specifically to respond to RFP 29 and thus waives a work product objection interposed seven months after Defendant agreed to "comply with" the request. All discussions with third-party retailers concerning production of sales and price data have stalled in the meantime (with Plaintiff's expert disclosures due in fifty-eight days).

Defendant has not challenged the relevance of the UPCs and knows they are important for obtaining retail sales and price information that, in a mislabeling case, is itself relevant to show that damages are capable of measurement on a class-wide basis. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104-06 (N.D. Cal. 2018). Defendant's work product objection is nonsensical. Defendant agreed *seven months ago* that it would "comply with" RFP 29, which expressly requested the UPCs. Production of the UPCs does not constitute work product any more than production of the data in the spreadsheet already created by Defendant to respond to RFP 29. The objection is meritless and, in any event, was waived when Defendant agreed to respond in the first instance.

Defendant's repeated and strategic delays with regard to the UPCs have reached a tipping point that seriously jeopardizes Plaintiff's ability to comply with the current scheduling order. (ECF No. 40.) Plaintiff respectfully requests that the Court order Defendant to produce the UPCs without further delay.

Respectfully submitted,

s/ Rebecca Timmons
Rebecca K. Timmons (FL BN 121701) (PHV)
Matthew D. Schultz (FL BN 640328) (PHV)
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
btimmons@levinlaw.com
mschultz@levinlaw.com

*Counsel for Plaintiff*

# EXHIBIT A

| 4 | **RFP NO. 29:** |
|---|---|
| 5 | Documents sufficient to identify all SKUs and UPCs (by year, if applicable) for every |
| 6 | formulation of each Class Product sold within the United States during the past five years. |

| 13 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:** |
|---|---|
| 14 | Responding Party incorporates all objections to Defined Terms, above, used in this request. |
| 15 | Responding Party further objects to this request on the ground that it is vague, ambiguous, |
| 16 | compound, overbroad in scope and unduly burdensome. Responding Party further objects to this |
| 17 | request on the ground that it calls for disclosure of information that is trade secret or otherwise |
| 18 | proprietary, private and confidential. Responding Party further objects to this request on the |
| 19 | ground that the information sought is, in whole or in part, neither relevant to the matters at issue |
| 20 | nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party |
| 21 | further objects that the defined term "Class Products" is different from the definition of "Class |
| 22 | Products" in the operative pleading, and in any event, no class or "Class Products" has been |
| 23 | certified. |
| 24 | Subject to and without waiving these objections, Responding Party answers that upon entry |
| 25 | of a suitable Protective Order, it will comply with this request. |